UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNEY RAMEY,<br><br>    Plaintiff,<br><br>  v.<br><br>J. FRANCO, et al.,<br><br>    Defendants. | No. 2:16-cv-2107 JAM CKD P<br><br>ORDER and FINDINGS &<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendant's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 51) and plaintiff's motions to expedite (ECF Nos. 54, 66, 68), to compel (ECF No. 56), and to appoint counsel (ECF No. 64).

I.     Procedural History

On screening the second amended complaint, the undersigned found that plaintiff had stated claims for violation of his Eighth Amendment rights and retaliatory harassment against defendant Anderson and recommended that the claims against all other defendants be dismissed without leave to amend and without prejudice to re-filing in a separate action. (ECF No. 22.) The findings and recommendations were adopted, and all defendants expect Anderson were dismissed. (ECF No. 27.) Rather than answering the complaint, Anderson filed a motion to revoke plaintiff's in forma pauperis status (ECF No. 28), which was ultimately denied (ECF Nos.

1

43). After the motion to revoke was denied, defendant answered the complaint (ECF No. 44) and a scheduling order was issued (ECF No. 45).

Prior to the close of discovery, defendant filed a motion for reconsideration of the order denying the motion to revoke (ECF No. 50), the currently pending motion for summary judgment (ECF No. 51), and a motion to stay discovery and modify the scheduling order (ECF No. 52). The motion to stay discovery was granted, and all discovery was stayed pending resolution of the motion to revoke and motion for summary judgment, while the discovery and pretrial motion deadlines were vacated. (ECF No. 53.) The parties proceeded to complete briefing on the motion to revoke and motion for summary judgment, and plaintiff filed motions to expedite (ECF Nos. 54, 66, 68), to compel (ECF No. 56), and to appoint counsel (ECF No. 64). The motion for reconsideration was granted, and upon reconsideration the District Judge affirmed the denial of defendant's motion to revoke. (ECF No. 67.)

II. <u>Plaintiff's Allegations</u>

Plaintiff alleges that five days a week, over a six-month period, defendant Anderson would constantly bang on the prison bars and shine a flashlight in his face between the hours of 10:30 p.m. and 4:00 a.m. in order to deprive him of sleep. (ECF No. 20 at 5, 10-11.) It is unclear when the six-month period occurred, as plaintiff alleges at various points in the complaint that the conduct occurred from March to December 2016; January 12 to December 2016; and January to July 2016. (<u>Id.</u> at 2, 5-6, 10-11.) When plaintiff complained about Anderson's conduct, Anderson was disciplined and then retaliated against plaintiff by continuing his harassment with increased aggression. (<u>Id.</u> at 5.) As a result of the prolonged sleep deprivation caused by Anderson's harassment, plaintiff was rushed to the hospital "for chest pains, stress heart related mental or physical injury." (<u>Id.</u> at 11.)

III. <u>Motion for Summary Judgment</u>

    A. <u>Legal Standards for Summary Judgment</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

2

of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Id. Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On May 18, 2018, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 51-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

      B.      <u>Legal Standards for Exhaustion</u>

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204, 216. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available,' a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (emphasis in original) (citation omitted). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857 (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

5

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."); Brown, 422 F.3d at 936-37. The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168-69.

      C.     California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in California regulations. In 2015 and 2016, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2016).[1]

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels. Id., § 3084.7. The second level was "for review of appeals denied or not otherwise

---

[1] All citations to the California Code of Regulations are to those in effect in 2016.

6

resolved to the appellant's satisfaction at the first level, or for which the first level is otherwise waived by these regulations." Id., § 3084.7(b). The third level was "for review of appeals not resolved at the second level." Id., § 3084.7(c). An inmate was required to "submit the appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." Id., § 3084.8(b).

Each prison was required to have an "appeals coordinator" whose job was to "screen all appeals prior to acceptance and assignment for review." Id., § 3084.5. The appeals coordinator could refuse to accept an appeal by "rejecting" or "cancelling" it. Id., § 3084.6(a). An appeal could be "rejected" or "cancelled" for a number of reasons. Id., § 3084.6(b), (c). A rejected appeal could "later be accepted if the reason noted for the rejection [was] corrected and the appeal [was] returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection." Id., § 3084.6(a)(2). The reason for cancelling an appeal could be appealed, but a cancelled appeal could not be resubmitted unless is was later determined "that cancellation was made in error or new information [was] received which [made] the appeal eligible for further review." Id., § 3084.6(a)(3), (e).

### D. Defendant's Arguments

Defendant argues that the complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit. (ECF No. 51.) In response to plaintiff's opposition, defendant further asserts that plaintiff failed to demonstrate that he exhausted his remedies or that administrative remedies were unavailable. (ECF No. 59.)

### E. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

////

7

1       However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

      The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

      Plaintiff argues that his administrative remedies were exhausted "when all matters were considered, rejected, refused to be process under a citizen complaint, no monetary relief was available, or when granted and transferred from Folsom State Prison Building II, to a new location Building I Unit. Placing Johnney Ramey no longer at risk of retaliatory conduct for redress grievance right exercise." (ECF No. 58 at 10.) He also appears to claim that his submission of a claim to the California Board of Victim Compensation served to exhaust his administrative remedies (id. at 11; ECF No. 62 at 7-10) and that he was excused from exhaustion because his interests outweighed the institution's interest in requiring exhaustion (id. at 12).

////

8

F. <u>Undisputed Material Facts</u>

Plaintiff has failed to dispute defendant's statement of facts, and his opposition to the motion for summary judgment confirms that he did not appeal his grievances to the third level. Instead, he argues that he was excused from exhausting his administrative appeals. (ECF No. 58 at 10-13; ECF No. 61 at 1-6; ECF No. 62.) As a result, the facts surrounding plaintiff's pursuit of administrative remedies are largely undisputed.

At all times relevant to the complaint, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation and housed at Folsom State Prison (FSP). (Defendant's Undisputed Statement of Facts (DSUF) (ECF No. 51-3) ¶ 1.) Between October 2015 and the filing of the original complaint, plaintiff initiated three appeals related to defendant Anderson banging on the bars of his cell during the nighttime hours. (DSUF ¶¶ 7-8.)

i. Appeal No. FSP-O-15-01145

Plaintiff's initial submission in Appeal No. FSP-O-15-01145 was received by the appeals office on November 12, 2015, and in the "Action requested" section it stated that he was filing a citizen complaint, an employee complaint, and requesting an investigation. (DSUF ¶¶ 9, 11; ECF No. 51-4 at 23.) The appeal complained about defendant Anderson banging on the cell bars on November 9, 2015. (DSUF ¶ 10; ECF No. 51-4 at 23, 25.) Plaintiff was notified that the appeal would be processed as a regular appeal, rather than as a staff complaint; the appeal was rejected for failure to demonstrate a material adverse effect on his welfare; and he was directed to clarify his appeal and resubmit it. (DSUF ¶¶ 12-14; ECF No. 51-4 at 23, 33, 35.) Plaintiff's resubmitted appeal was received on December 10, 2015, but he failed to date and sign it, and it was rejected with instructions to resubmit the appeal with a signature and date. (DSUF ¶¶ 15-17; ECF No. 51-4 at 23, 34.) After plaintiff signed and resubmitted his appeal, it was once again rejected with instructions to clarify the action requested since it had already been determined that his appeal did not meet the criteria for a staff complaint. (DSUF ¶¶ 18-19; ECF No. 51-4 at 23, 42.) When plaintiff resubmitted the appeal, which was received on January 14, 2016, it stated that he was not

////

////

satisfied with the decision that it could not be filed as a staff complaint.[2] (DSUF ¶ 21; ECF No. 51-4 at 23-24.) The first-level appeal was partially granted to the extent that an investigation was conducted, and the investigation determined that plaintiff's claims were without merit. (DSUF ¶ 22; ECF No. 51-4 at 23, 28-29.)

Plaintiff appealed the first-level response, and his appeal was received on February 17, 2016. (DSUF ¶ 23; ECF No. 51-4 at 24.) The second-level appeal states that he was "[n]ot satisfy with the result" and that he was "requesting this matter to be exhausted."[3] (ECF No. 51-4 at 24.) It appears that he felt the watch commander's interview of defendant Anderson was insufficient. (Id.) On February 29, 2016, the second-level appeal was partially granted to the extent that plaintiff was interviewed and staff were advised to be mindful of sleeping inmates when attempting to get another inmate's attention during the night. (DSUF ¶ 25; ECF No. 51-4 at 26-27.) The second-level of review did not include a staff complaint inquiry and the response was mailed to plaintiff on March 8, 2016, and advised him that he could appeal the decision. (DSUF ¶¶ 26-27; ECF No. 51-4 at 24, 26-27.) The appeals office has no record of receiving a third-level appeal. (DSUF ¶ 28.)

### ii. Appeal No. FSP-O-15-01202

The first-level appeal in Appeal No. FSP-O-15-01202 was received by the appeals office on November 30, 2015. (DSUF ¶ 29; ECF No. 51-4 at 45-47.) The appeal complained about Appeal No. FSP-O-15-01145 being processed as a regular appeal instead of being processed as a

---

[2] Defendant states that plaintiff resubmitted the appeal and amended the "Action requested" section of the appeal to state "Not satisfy with response, exhaust." (ECF No. 20.) However, that section is dated June 10, 2015. (ECF No. 51-4 at 25.) While this is clearly not the date that portion was submitted, it is not clear whether plaintiff provided a completely inaccurate date or whether he provided only the incorrect year and defendant is mistaken as to when plaintiff submitted the amended action requested. Regardless, the section for appealing a first-level response is dated January 4, 2016, and clearly states that plaintiff was not satisfied with the decision that his appeal would not be processed as a staff complaint. (ECF No. 51-4 at 24.)

[3] Defendant's facts refer to plaintiff's response in the section for appealing a first-level decision. (DSUF ¶ 24.) However, it is clear from the dates on the form that the response defendant cites was part of the resubmission of the first-level appeal and that the appeal of the first-level response was provided in the space designated for appealing the second-level response. (ECF No. 51-4 at 24.)

10

citizen's complaint and requested that the appeal not be reclassified. (DSUF ¶¶ 30-31; ECF No. 51-4 at 45.) The appeal was cancelled as duplicative of Appeal No. FSP-O-15-01145 on December 3, 2015. (DSUF ¶ 32; ECF No. 51-4 at 44-45.) Plaintiff was notified that Appeal No. FSP-O-15-01145 was still viable and could be resubmitted by following the instructions provided. (DSUF ¶ 33; ECF No. 51-4 at 44.) He was also advised that a citizen's complaint could only be filed by non-incarcerated persons and that Appeal No. FSP-O-15-01145 did not meet the criteria of a staff complaint. (DSUF ¶ 34; ECF No. 51-4 at 44.) The cancellation notice also included an advisement that the cancellation could be appealed. (DSUF ¶ 35; ECF No. 51-4 at 44.) There is no record of plaintiff appealing the cancellation. (DSUF ¶¶ 36-37.)

### iii. Appeal No. FSP-O-16-00780

Appeal No. FSP-O-16-00780 was first received by the appeals office on July 12, 2016. (DSUF ¶ 38; ECF No. 51-4 at 106.) The appeal claimed that defendant Anderson was raking the cell bars between 10:30 and 10:45 in the evening between July 4 and 7, 2016, and requested that the appeal be a staff complaint and that Anderson be reassigned to the day shift. (DSUF ¶¶ 39-40; ECF No. 51-4 at 106.) The first-level appeal was denied on August 1, 2016, on the ground that the complaint was without merit. (DSUF ¶ 41; ECF No. 51-4 at 107-08.) Although the "findings" section of the response states that the appeal was partially granted, both the first page and conclusion clearly state that it was denied, and the findings also clearly deny both of plaintiff's requested forms of relief. (ECF No. 51-4 at 107-08.) The first-level response notified plaintiff that he could appeal to the second level, but there is no record of him doing so. (DSUF ¶¶ 42-43; ECF No. 51-4 at 108.)

## G. Discussion

Plaintiff does not deny that he failed to appeal any of the three grievances related to defendant Anderson's behavior all the way to the third and final level. Instead, the opposition, though difficult to understand and spread across multiple documents, appears to put forth a number of reasons why he was excused from exhausting his administrative remedies. Specifically, he seems to argue that he is excused from exhaustion because (1) his grievances and claim to the California Board of Victim Compensation were rejected, denied, or partially granted

11

and he had no other relief available (ECF No. 55; ECF No. 58 at 10-12; ECF No. 62 at 1-2, 8-9, 13-14); (2) Anderson's conduct was retaliatory and put him in imminent risk of danger (ECF No. 55 at 2; ECF No. 62 at 2-3); (3) he was entitled to file an emergency appeal (id. at 5); and (4) he provided sufficient notice and his interests outweighed the institution's interest in requiring exhaustion (id. at 12).  However, as discussed below, plaintiff's arguments fail to demonstrate that he was excused from exhausting his administrative remedies.

### i. No Available Relief

Plaintiff appears to be attempting to argue that because he could not obtain monetary relief, was denied the ability to file his grievance as a citizen's complaint or staff complaint, and was advised there was no other relief available, the rejections, cancellation, and denials of his appeals and government claim excused him from pursuing the grievance process to the third level.  (ECF No. 55 at 6; ECF No. 58 at 10-11; ECF No. 62 at 11, 13-14.)  He appears to be arguing both that no remedies were available and that he was satisfied by the responses he received.  He also argues that defendant has failed to identify what other relief was available to him.  (ECF No. 58 at 10.)

As an initial matter, plaintiff spends a significant time addressing the requirements for submitting a claim under the California Government Code.  (ECF No 55 at 3-4; ECF No. 58 at 12; ECF No. 61 at 3; ECF No. 62 at 7-8, 10.)  To the extent he seems to argue that the denial of his claim to the Victim's Compensation Board served as an advisement that no further relief was available, he is mistaken.  The claim presentation requirements of the California Government Code apply only to state tort claims and have no bearing on whether plaintiff has exhausted or was excused from exhausting his administrative remedies for purposes of the PLRA, nor do they dictate whether relief was available through the institutional appeals process.

With respect to plaintiff's institutional appeals, the mere fact that they were rejected, cancelled, or denied does not mean that there were no further remedies available to him.  Though plaintiff's initial submissions in Appeal No. FSP-O-01145 were rejected, further relief was clearly available since plaintiff resubmitted each rejected grievance and it was eventually accepted and partially granted after he fixed the problems that had led to the grievances being

12

rejected.  As to the cancelled grievance, plaintiff could have appealed the cancellation and provides no evidence that he was prevented from doing so, or that the cancellation of Appeal No. FSP-O-01202 as duplicative in any way inhibited his ability to pursue his grievance in Appeal No. FSP-O-01145.  Nor does the fact that his grievances were denied or only partially granted demonstrate that no relief was available, as each appeal response notified plaintiff that he could appeal the decision to the next level if he was not satisfied.  The regulations governing institutional appeals clearly states that "[a]ll lower level reviews are subject to modification at the third level of review."  Cal. Code Regs. tit. 15, § 3084.1(b).  Accordingly, as defendant points out, since plaintiff was never granted a staff complaint inquiry, at a minimum, he could have appealed to the third level in an attempt to obtain a staff complaint inquiry into Anderson's conduct.  (ECF No. 51-2 at 8.)  The fact that monetary compensation was not available through the institutional appeals process does not mean that no relief was available.  Booth, 532 U.S. at 734 (prisoner seeking only money damages must still go through the grievance process so long as some kind of relief could be provided, even if no monetary relief was available).

With respect to plaintiff's claims of satisfaction related to the partial grants he received, the Ninth Circuit has held that once prison officials purport to grant relief that resolves a grievance to a prisoner's satisfaction, the grievance process has been exhausted.  Harvey v. Jordan, 605 F.3d 681, 686 (9th Cir. 2010).  However, plaintiff's claims of satisfaction are not supported by the record.

The clearest claim that plaintiff makes with regard to satisfaction is that he was satisfied by his transfer to Building I and therefore not required to continue with the appeals process. (ECF No. 58 at 10-12; ECF No. 62 at 2, 14.)  But plaintiff's transfer to Building I was never part of the relief he was granted.  (ECF No. 51-4 at 26-29, 107-08.)  Furthermore, he was not transferred to Building I until October 2, 2016 (ECF No. 50-2 at 2, ¶ 6); two months after his last appeal related to Anderson's conduct was denied (ECF No. 51-4 at 107-08).  The court also notes that plaintiff's claim that he was satisfied by his transfer to Building I because it put him beyond Anderson's reach directly contradicts his claims that he remained in imminent danger of serious physical injury even after his transfer to Building I.  Based on these facts, plaintiff's transfer to

13

Building I was not capable of excusing his exhaustion.

Plaintiff also appears to claim, though less clearly, that he was satisfied by the partial grant of his appeals because he was told that Anderson would stop banging on the cell bars. (ECF No. 58 at 12; ECF No. 62 at 2, 9.) However, the appeals response stated only that "[s]taff working during inmates' normal sleep hours, have been advised to be more careful when attempting to get an inmates' attention, without waking up or interrupting other un-involved inmates." (ECF No. 51-4 at 26.) Furthermore, in light of plaintiff's assertions that Anderson's conduct continued unabated and in fact increased after plaintiff "put him in trouble with his supervisors" (ECF No. 20 at 5), the court cannot find that plaintiff was satisfied with the response he received and thereby excused from pursuing his appeal to the third and final level.

ii. Intimidation and Imminent Risk

In opposing the motion for summary judgment, plaintiff makes numerous claims that he was at imminent risk of serious physical injury and that defendant Anderson's conduct was retaliatory and intended to keep him from filing grievances. (ECF No. 55 at 1-2, 4-5; ECF No. 62 at 2-7, 11.) However, it is not clear whether he is simply arguing the merits of his case or claiming that administrative remedies were unavailable because of Anderson's intimidation. Assuming he is attempting to claim administrative remedies were unavailable due to intimidation, his argument fails.[4]

Although intimidation can render administrative remedies unavailable, Ross, 136 S. Ct. at 1860, plaintiff has failed to sufficiently establish that he was subject to intimidation that rendered the grievance process unavailable. In McBride v. Lopez, the Ninth Circuit adopted the Eleventh Circuit's test for determining whether a failure to exhaust is excusable due to intimidation. 807 F.3d 982, 987-88 (9th Cir. 2015).

> The Eleventh Circuit test . . . requires that two conditions be met: "(1) the threat [of retaliation] actually did deter the plaintiff inmate

---

[4] The imminent risk of serious physical injury exception applies to the three strikes provision of the PLRA, 28 U.S.C. § 1915(g), not the exhaustion requirement, 42 U.S.C. § 1997e(a). However, plaintiff's claims of imminent danger will be considered as part of the claim that administrative remedies were unavailable due to intimidation.

14

> from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."

Id. at 987 (second alteration in original) (quoting Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)). However, plaintiff has not established that he was actually deterred from filing grievances because of Anderson's conduct. Not only does plaintiff state in numerous places that he did not further pursue his administrative remedies because he was satisfied with the response or felt that there was no additional relief available (ECF No. 55 at 1, 4 6; ECF No. 58 at 10-12; ECF No. 62 at 1-2, 13-14), but he explicitly states that he "filed additional 5 grievances, complaining of retaliatory act for first Amendment right exercise" during the time the alleged retaliatory conduct was taking place (ECF No. 55 at 5; ECF No. 58 at 2 (stating that he filed three or more grievances regarding Anderson's conduct)). Based on plaintiff's own statements, he was not actually deterred from exhausting his grievances due to Anderson's intimidation, and so administrative remedies were not unavailable on this ground.

### iii. Emergency Appeal

Plaintiff refers to filing emergency appeals, and though not clear, it appears that he may be attempting to argue that because his appeals qualified as emergency appeals he was not required to exhaust them. (ECF No. 62 at 5, 7.) However, plaintiff did not file his appeals as emergency appeals (ECF No. 51-4 at 23-25, 45-47, 106), and even if he had, emergency processing did excuse exhaustion, but instead allowed an inmate to skip the first level of the appeals process, Cal. Code Regs. tit. 15, § 3084.9(a)(4). Accordingly, plaintiff's claim that his circumstances warranted an emergency appeal and therefore excused exhaustion is without merit.

### iv. Prevailing Interest

Plaintiff argues that he was not required to exhaust his administrative remedies because his interest in immediate judicial review outweighed the government's interest in requiring exhaustion. (ECF No. 62 at 12 (citing West v. Bergland, 611 F.2d 710, 715 (8th Cir. 1979)). However, this rule does not apply "in those cases where exhaustion of administrative remedies is specifically required by statute." West, 611 F.2d at 715 (citation omitted). Because exhaustion in

this case is statutorily mandated, plaintiff's argument that his interests in immediate judicial review excuse him from the exhaustion requirement must fail.

H. Conclusion

For the reasons set forth above, the undersigned does not find that plaintiff was excused from exhausting his administrative remedies and defendant's motion for summary judgment should be granted.

IV. Motions to Expedite, Compel, and Appoint Counsel

Plaintiff has filed several motions to expedite this case for trial (ECF Nos. 54, 66, 68), a motion to compel documents related to defendant's job post assignments (ECF No. 56), and a motion to appoint counsel (ECF No. 64). In light of the recommendation that defendant's motion for summary judgment be granted, these motions will be denied.

V. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendant's motion for summary judgment be granted because you admit that you did not appeal your grievances to the third level and you have not shown that the appeals process was unavailable. Defendant has shown that you could have appealed the denial of your request for a staff complaint inquiry. Your transfer to another building also did not excuse you from having to exhaust because your transfer was not part of the appeals process and happened two months after your last appeal about Anderson was denied. Because it is being recommended that defendant's motion for summary judgment be granted, your motions to expedite, to compel, and to appoint counsel are being denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motions to expedite this case for trial (ECF Nos. 54, 66, 68) are denied.

2. Plaintiff's motion to compel (ECF No. 56) is denied.

3. Plaintiff's motion to appoint counsel (ECF No. 64) is denied.

IT IS FURTHER RECOMMENDED that defendant's motion for summary judgment (ECF No. 51) be granted and the second amended complaint be dismissed without prejudice for failure to exhaust administrative remedies.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 20, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

13:rame2107.msj.f&r